HARNEY, ADMR. v. MONTGOMERY, ET AL.
(No. 1035; Decided March 19, 1923; 213 Pac. 378)

CONVEYANCES—MORTGAGES—ACKNOWLEDGMENT BEFORE A DISQUALI-
FIED NOTARY—FORECLOSURE UNDER POWER OF SALE—HOMESTEAD
EXEMPTION—OCCUPANCY OF HOMESTEAD—EQUITABLE MORTGAGE—
CONSTRUCTIVE NOTICE—LACHES—ESTOPPEL—WAIVER.

1. A mortgagor, over the age of sixty years, residing within the state, was, under the provisions of Comp. Stats. 1910, Sections 4755 and 4756, in force at the time of the execution of the mortgage, entitled to claim a homestead right in the mortgaged premises, even though not residing upon the land at the time, but his failure to claim such homestead right at any time prior to sale of the premises under a foreclosure of the mortgage, constitutes a bar to the claim.

2. A mortgage of realty, acknowledged before a notary disqualified to act by reason of his joint interest with mortgagees in the security, is, by reason of the disqualification of such notary, illegally executed, and though the notary's certificate be regular on its face, the mortgagees are charged with notice that the mortgage is not entitled to record.

3. Comp. Stats. 1920, Section 4628, requires a mortgage of realty to be duly recorded, before it may be foreclosed by advertisement, under a power of sale, therefore, a sale of real estate, under a power contained in a mortgage, improperly recorded because acknowledged before a disqualified notary, of which fact mortgagees had notice, and a sheriff's deed issued to mortgagees pursuant to such sale, are as between the parties to the mortgage, null and void.

4. Laches cannot be imputed to a party justifiably ignorant of the facts creating his cause of action brought within the time fixed by the analogous statute of limitations, and the burden is on defendants, to show that extraordinary circumstances exist which require the application of the doctrine of laches and estoppel, in order to secure a just result.

5. Where a sale under mortgage foreclosure is voidable at the option of the mortgagor, particularly where it is sought upon reasonable grounds to defeat the whole instrument and lien given thereunder, an offer before suit on the part of the plaintiff to do equity, by tendering to defendants the amount due them, is not indispensable to the maintenance of an action to set aside the sale.

6. A mortgage of realty is good between the parties as an equitable mortgage though not acknowledged, and a mortgagor seeking the cancellation thereof must do equity, by the payment of the mortgage debt with accrued interest, together with any sums advanced and paid by defendants in the discharge of existing liens against the property, with interest thereon, from date of payment, and the decree should so provide.

7. The holder of a term lease of land, granted by the holders of a title apparently good, but in fact defective for reasons not disclosed by the record thereof, will be protected in resulting litigation, by a decree substituting the successful party as lessor and directing that the rights of such lessee remain undisturbed.

APPEAL from the District Court, Crook County; HON. JAMES H. BURGESS, Judge.

Action by John Harney as plaintiff against Alvis Montgomery and others, for the cancellation of a mortgage lien upon lands. The plaintiff having died since the appeal, Hugh Harney, his administrator, was substituted as appellant. The material facts are stated in the opinion.

*Raymond, LaFleiche & Kem, J. F. McGuckin* and *L. H. Simons,* for appellant.

The issues in this cause are clearly stated by the pleadings; appellant contended below that the lands involved were his homestead, and that his right to a homestead therein had not been waived; second, that the mortgage was not entitled to record because of a defective acknowledgment taken before a disqualified notary; it was alleged and proven that appellant was over sixty years of age at the time the mortgage was given and was residing in the state; this conferred a homestead right (Laws 1909, Ch. 102; Sections 4755, 4756 C. S. 1910;) the amendment by Ch. 104, Laws 1915 could not effect this right. Franklin v. Coffee, 70 Amer. Dec. 292 cited by defendant is not in point. Occupancy was unnecessary, (21 Cyc. 471.) Powers v. Pense, (Wyo.) 123 Pac. 925, cited by respondent, involved a purchase money mortgage; the instrument did not contain a waiver of homestead right. A homestead right may exist in lands not contiguous (Mayho v. Cotton, 69 N. C. 289; Swandale v. Swandale, 25 S. C. 389; Nance v. Hill, 1 S. E. 897; Melton v. Andrew, 45 Ala. 454.) The homestead exemption depends upon the statutes or constitution in each state, and, unless occupancy is required, the right may be claimed in any property; the notary before whom the mortgage was acknowledged had an interest in the security and was disqualified; the instrument was not entitled to record; the mortgagees were charged with notice of this, and the foreclosure and sale were void. Foreclosure under a power is not permissible unless the instrument be duly recorded.

This action is between the original parties to the mortgage; the mortgage was not witnessed (Conradt v. Lepper, 81 Pac. 307; Whalen v. Canal Co., 71 Pac. 1000; Boswell v. Bank, 92 Pac. 624;) the mortgage while enforceable in equity, was illegally executed (Frank v. Hicks, 35 Pac. 475;) it could not be foreclosed by advertisement (First National Bank v. State Bank 70 Pac. 726;) the acknowledgment was void (Association v. Mensch, 196 Ill. 554; 63 N. E. 1049; Kothe v. Krag-Reynolds Co. (Ind. App.) 50 N. E. 594; Horback v. Tyrrel, 48 Neb. 514; 67 N. W. 485-489; 37 L. R. A. 434; Withers v. Baird, 7 Watts. 227; 32 Am. Dec. 754; Browne v. Moore, 38 Tex. 648; Davis v. Beasley, 75 Va. 491; Grosbeck v. Seeley, 13 Mich. 329; Miles v. Kelly, 16 Tex. Civ. App. 147; 40 S. W. 599; 1 Devl. Deeds (2nd Ed.) 467; 1 Cyc. Law & Proc. 553 and cases cited; 1 Enc. Law (2nd Ed.) 493 and cases cited.)   The evidence shows that Armstrong, the notary, concealed his interest in the security in order to get the instrument recorded; he also witnessed it which was unlawful (Amick v. Woolworth, 50 N. E. 437;) Malvin, whose name appears as a witness to the mortgage, did not see it executed as appears from the evidence.   The foreclosure sale was void, and the sheriff's deed issued pursuant thereto is also void.   The judgment should be reversed.

*Thos. A. Nicholas* and *Chambers Kellar,* for respondents.

Findings of the trial court based upon conflicting evidence will not be disturbed. (Wyman v. Quayle, 63 Pac. 988, (Wyo.) Collins v. Stanley, (Wyo.) 88 Pac. 630; Stanley Land Co. v. Beckstead, 192 Pac. 1056, (Wyo.); 2 R. C. L. Sec. 173, Page 204; 4 Corpus Juris, 843.)   The appellant having presented but two propositions will be deemed to have abandoned all others.   (2 R. C. L., Sec. 153, Page 178; Boswell v. Bliler, (Wyo.) 63 Pac. 350; Syndicate Co. v. Bradford, (Wyo.) 43 Pac. 79; Chicago B. & Q. Co. v. Lampman, 104 Pac. 533, (Wyo.).   It is conceded that appellant was over sixty years of age and a resident of the state when the mortgage was executed; the case differs from one where

the enforcement of a judgment is sought by execution or when an execution is levied upon exempt land; no .claim of homestead was made by appellant before the foreclosure sale; appellant did not occupy the premises and it was impossible to know what land he claimed in the homestead; the exemption rule will not protect fraud.    (Powers v. Pense, (Wyo.) 123 Pac. 925.)    Appellant, in fact, resided on other lands on the date of the mortgage; he made no objections to the foreclosure; homestead means the home place (15 A. & E. Enc. 575; Wyo. Const. Article XIX, Section I.) The statute defines what it may consist of (4758 C. S. 1910;) there must be some occupancy or claim of homestead manifested (21 Cyc. 472-488; Note to. Pryor v. Stone, 70 Am. Dec. 344; Keyes v. Bump, 9 Atl. 598; Jensen v. Griffin, 144 N. W. 119; Grosholz v. Newman, 21 Wall. 481; 22 L. Ed. 471; Davis v. Kelley, 14 Iowa, 523; Davis v. Kelly, 87 N. W. 347; Hall v. Houston, 66 Pac. 358; Hyde v. Ishmael, 143 Pac. 1044; Lakas v. Archambault, 176 Pac. 180; Lauri v. Crouch, 139 Pac. 304; Franklin v. Coffee, 70 Am. Dec. 292; Edgerton v. Connelly, 44 Pac. 22; Cowan v. Burchfield, 120 Fed. 614; Lenora State Bank v. Peak, 44 Pac. 900.)    The exemption applies as against creditors; there is a distinction in the rule as to voluntary contract (Lenora State Bank v. Peak, 44 Pac. 900; 21 Cyc. 512.)    The homestead may be unencumbered (3662 C. S. 1910.)    Fundamentally there must be a homestead established by the owner or occupant (Towne v. Rumsey, 5 Wyo. 11; Ulman v. Abbott, 67 Pac. 467.)    The homestead right accorded a resident of the state over sixty years of age by Section 4756 C. S. 1910 contemplates a right acquired by claim on occupancy (36 Cyc. 1106;) it applies as against creditors but not to a voluntary alienation; a lease may be the basis of the right (Pryor v. Stone, 70 Am. Dec. 344.)    Appellant occupied adjoining land under lease in which a homestead right might have been claimed (Franklin v. Coffee, 70 Am. Dec. 292; Johnson v. Martin, 16 S. W. 550; Bank v. Peak, 44 Pac. 900.) There is no such thing as the possession of two homesteads

at the same time (Bank v. Peak, supra; Wapello County v. Brady, 92 N. W. 717; Mayho v. Cotton, 69 N. C. 289.) Cases cited by appellant involved exemption against execution; Armstrong's interest was contingent; he was not a partner with mortgagees, the trial court so found; the trial court found, however, that Armstrong was disqualified. But a mortgage is valid without a subscribing witness or acknowledgment (Boswell v. First National Bank (Wyo.) 93 Pac. 661; Frank v. Hicks, 4 Wyo. 502; 35 Pa. 1035; Conradt v. Lepper, (Wyo.) 81 Pac. 307; Whalon v. North Platte Co. (Wyo.) 71 Pac. 995; Cooper v. Hamilton, 97 Tenn. 285; 56 Am. St. Rep. 795; 19 R. C. L. 283, Sec. 55, Note 14;) the equitable mortgage theory applies to instruments where the defect appears on the face thereof (Frank v. Hicks, supra.) Where there is nothing on the face of the mortgage or certificate of acknowledgment to show the notary's interest, the instrument is properly recorded (Boswell v. First National Bank, (Wyo.) 93 Pac. 661; Powers v. Pense, 123 Pac. 925, (Wyo.); Kee v. Ewing, 87 Pac. 297; Norrow v. Cole, 42 Atl. 673; Ardmore Nat'l Bank v. Briggs Co., 94 Pac. 533; Cooper v. Hamilton, 97 Tenn. 385; 56 Am. St. Rep. 795; 1 C. J. 773, Sec. 55; 1 Cyc. 530; 1 R. C. L. 273.) Foreclosure under a power of sale is a matter of contract and irrevocable, and the power need not be recorded (Jones Mtges, Sec. 1784; and cases cited; Bergen v. Bennett, 2 Am. Dec. 281; Wilson v. Troup, 14 Am. Dec. 458.) The question is purely one of the legal status of the record (Clark v. Mitchell, 84 N. W. 327; Brown v. Comenew, 114 N. W. 728; Curtis v. Cutler, 76 Fed. 16; Hickey v. Richards, 20 N. W. 428; Bottineau v. Aetna Life Insurance Co., 16 N. W. 849; Backue v. Burke, 51 N. W. 284; Bank of Benson v. Hove, 47 N. W. 449.) Statutes providing foreclosure under a power are liberally construed; (Jones, Mtges. 2nd Ed. Vol. 2, Sec. 1764; McCardis v. Billings, 87 N. W. 1008; Hickey v. Richards, 20 N. W. 428.) Armstrong was entitled to act as a witness (Doe v. Turner, 7 Ohio 504; Welsh v. Lewis, 71 Ga. 387; 2 Jones, Real Prop. 1099; Webb, Record Titles, 127.) A

sale under a power, is as effective to convey title as a sale under a decree of foreclosure (Fighiera v. Radis, 182 Pac. 418; Nichols v. Tingstad, 86 N. W. 694; Reilly v. Phillips, 57 N. W. 780; Felner's Admr's. v. Slingluff, 71 Atl. 978; The Bell Co. v. The First Nat. Bank, 156 U. S. 470; 39 L. Ed. 497;) even if it were not as effective as a sale under a decree, the mortgagor is required to act with promptness in attacking the validity of the sale, otherwise he is estopped (Shelby v. Bowden, 94 N. W. 416; Northwestern Mortgage Co. v. Bradley, 70 N. W. 648; Higbee v. Dasley, 109 N. W. 318.) Appellant's conduct was an affirmation and recognition of the validity of the sale; he is estopped from repudiating the transaction (16 Cyc. 791.) In any event the appellant must be limited to a claim of $1500.00 for exemption rights of the lessee; the Tri-State Oil Co. should be protected in its ten year lease.

*J. T. McGuckin, L. M. Simons, Raymond, LaFleiche & Kem,* in reply.

The mortgage was secured by false statements; the time for redemption was allowed to expire by false assertions by respondent, Armstrong; Armstrong's interest was not contingent; the acknowledgment taken by Armstrong was void; (Boswell v. Bank, supra.) the mortgage involved in Powers v. Pense was a purchase money mortgage; the facts were entirely different from the case at the bar; the foreclosure was void and sheriff's deed should be vacated.

BLUME, Justice.

John Harney, original appellant, was plaintiff below and will be denominated plaintiff herein, and whenever that term is used it will have reference to him, including the claims made by or against him in the court below, and in this court by or against him and the substituted appellant. The plaintiff has died since the appeal of this case, and his administrator has been substituted as appellant. Respondents were defendants below and will be so denominated herein. The

main facts material herein are substantially as follows: Prior to December 15th, 1913, plaintiff, an unmarried man, of the age of about 64 years, had become indebted to the J. N. Arnold Company of Belle Fourche, So. Dak., for certain merchandise bought, in the sum of $218.50. On the date mentioned, the said company became bankrupt, a trustee was appointed for the bankrupt estate, and on October 31, 1914, the property of said estate, consisting of accounts, notes and judgments, of the aggregate par value of $26,700 was bought by the defendants Alvis Montgomery and Mamie Bryon for the sum of $925.00. This purchase was so made pursuant to an agreement previously made by and between said purchasers (the husband of defendant Bryon acting for her) and the defendant J. M. Armstrong, an attorney at law, under which the said purchasers should buy said estate, said Armstrong was to do all the legal work in connection therewith and after paying back to said purchasers the amount of the purchase money, and whatever expenses might be incurred, the said Armstrong should have an undivided one third interest in all the remaining property. Among the bankrupt property so bought was the indebtedness of the plaintiff, of $218.50, above mentioned. In order to collect or secure this claim, the defendants Montgomery and Armstrong went to see the plaintiff on December 14, 1914, who was then and at the date of the trial, living on some school lands, leased from the State of Wyoming, under a lease renewable for five year periods. Adjoining this land was a tract of 320 acres which the plaintiff had some years previously filed on as a desert land entry; but the entry had been cancelled by the general land office and plaintiff was at that time attempting to get it reinstated. It may be said here that the entry was in fact subsequently reinstated and patent issued to plaintiff on June 5, 1918. The land so referred to is the south half of the northeast quarter; northwest quarter of northeast quarter; northwest quarter of southwest quarter; northwest quarter of Sec. 34, Twp. 57, N. R. 61, west of the 6th P. M. in Crook County.

When the defendants Montgomery and Armstrong saw the plaintiff as above mentioned on December 14, 1914, the latter agreed to execute and did in fact execute, in renewal of the old indebtedness above referred to, a new note dated December 14, 1914, due in two years, for the principal sum of $218.50 with 8% interest per annum, given to Montgomery & Co., secured by a mortgage in the usual form, containing the usual power of sale clause, and given to defendants Montgomery and Bryon. No other notary being present, the parties crossed over a few miles from plaintiff's residence in this state into South Dakota and the defendant Armstrong, a notary public of South Dakota, there took the acknowledgment of the plaintiff to the mortgage. Neither the body of the instrument nor the acknowledgment refer in any way to the right of homestead. The parties agreed, for the purpose of not jeopardizing the claim for reinstatement of the desert land entry, that the mortgage should not then be placed of record. This agreement was carried out and the mortgage in question was not filed for record until October 25, 1917. But in the meantime the plaintiff mortgaged the same premises to one Bertha Brenniman, which mortgage was placed of record on May 10, 1917, taking precedence, accordingly, of the mortgage first given. Foreclosure proceedings on the mortgage involved here were commenced on November 13, 1918, and the property hereinabove mentioned was duly sold, after proper advertisement, under the power of sale contained in the mortgage, on December 30, 1918, and no redemption having been made, a sheriff's deed was issued to the purchasers at said sale, the defendants Montgomery and Bryon, on July 1, 1919, and thereafter on September 4th, 1919, duly placed of record. Thereafter, on October 2, 1919, said defendants executed and delivered to the Tri-State Oil Association a lease of said premises for a period of ten years from and after October 2, 1919, which said lease contained covenants upon the part of the lessors that they were the lawful owners of said premises, and seized of a good and indefeasable

estate therein. They also subsequently paid off the Brenniman mortgage, in the sum of $1191.00, and the taxes for 1919 in the sum of $21.63. The action in this case was commenced on April 15, 1920. The plaintiff asks that said mortgage be cancelled of record; that the foreclosure proceedings thereunder and the sheriff's deed issued pursuant thereto be declared void and that title to said land be quieted in plaintiff. The facts generally as to the giving of said mortgage, the fact that said land was the homestead of said plaintiff; the fact that the acknowledgment to the mortgage was void because of the interest of the defendant Armstrong therein, and other facts not necessary to be mentioned herein, were set forth in the amended petition as grounds for the prayer. The defendants duly answered, and in their cross-petition asked the affirmative relief that the title to said premises be quieted in the defendants Montgomery and Bryon. Some other pertinent facts will be hereinafter mentioned. The lower court, after making findings of fact, dismissed the plaintiff's petition and quieted the title as asked in the cross-petition. From this judgment the plaintiff appeals. Two points only, hereafter mentioned, are urged for reversal of the case.

1. It is the contention of plaintiff that he, being over the age of 60 years at the time the mortgage was given, was entitled to claim a homestead upon the land in question whether living thereon or not, under the provisions of Sections 4755 and 4756, Wyo. Comp. St. 1910, in force at the time the mortgage herein was executed, and that hence it follows, as a matter of law, that plaintiff, not having waived his homestead right at the time he executed the mortgage in question, may still claim it therein at this time. The lower court found in its findings of fact that the plaintiff at the time of the execution of the mortgage in question was not "nor prior thereto had he been using or occupying the premises in controversy covered by said mortgage as a homestead, nor claiming the same as such," but that on the contrary he was occupying the leased premises heretofore

referred to as such homestead. We need not determine as to whether or not the plaintiff could claim, as a homestead, premises that were only leased, or could also claim a homestead in other lands that he owned or in which he had an inchoate right as in the case at bar. The finding that plaintiff did not occupy or claim as a homestead the land in controversy at the time of the execution of the mortgage is not attacked in the brief; but the conclusion that the court drew therefrom is, as above indicated, questioned as not warranted. Prior to 1909, a homestead was exempt as such only while occupied by the claimant or his or her family. That is the law also since 1915 (Sec. 6029, Wyo. Comp. Stat. 1920.) But in the former year the legislature amended the law then in force and provided that a homestead of a person entitled thereto should be exempt not only while occupied as such, but also "while the owner is actually living within the State of Wyoming." (Sess. Laws 1909, c. 102, § 2) Section 3662, Wyo. Comp. St. 1910) (Now Sec. 4619, Wyo. Comp. Stat. 1920) provided that no instrument disposing of, or mortgaging, a homestead should be construed as releasing the right of homestead, unless the same should contain a clause expressly releasing or waiving such right, and that, in such case, the certificate of acknowledgment should contain a clause to the effect that such homestead right had been waived or released.

We may concede, without deciding, that under the act of 1909, in force in 1914, a claimant to a homestead did not necessarily have to reside upon it. He might, perhaps, claim as such another tract of land. But what, if he did not claim it as such? If he did not reside upon it, nor lay any claim to it as a homestead, present or future, but on the contrary disposed of it, for instance, to another, by an absolute deed, it would be strange indeed that some years later he could claim a homestead right in lands belonging to another. While an instrument will not, as we have seen, be construed under Sec. 4619, Wyo. C. S. 1920, as releasing a homestead right unless a clause to that effect is specifically set forth

therein, it must be quite clear that unless such homestead right is in existence at the time of the execution of such instrument, no mention would need to be made of such fact. A non-existent right need not be released. The grantor's right might be absolute or contingent, still it must be a right that is actually existing at the time of a conveyance, in order that it should be waived or released. Plaintiff did not reside on the land in controversy and did not occupy it as a homestead. Hence, in view of the lack of statutory provisions, while the act of 1909 was in force, fixing the method or means by which a homestead claim might be designated, it is clear that, outside of occupancy, the only possible means, if at all, by which the existence of a homestead right in the land in controversy could be acquired would be through a claim thereto, which, as the court found, was not made herein at the time of the execution of the mortgage and apparently not until the filing of the amended petition in this case. We need not decide what effect the repeal of the act of 1909 by the legislature in 1915, insofar as allowing a homestead without occupancy, had upon the rights of plaintiff, if he had actually occupied or claimed the premises in controversy as a homestead, but it seems clear that where he neither claimed it or occupied it as such, a claim made subsequent to said repeal should be considered as worthless and without avail, and it has been so held. (Clark v. Snodgrass, 66 Ala. 233.) The law in this state has at all times exempted from execution and forced sale a *homestead*; not any tract of land whatever, which the execution debtor may have owned at any time previously. Nor did the legislature of 1909 manifest any intention to abandon the idea that a homestead contemplated a *home*; and while, possibly, that law did not require the home to be occupied as such at all times, it at least retained the thought that in some way the land exempted should be a home, at least either present or future. And it is unreasonable to construe the legislative act of 1909 to mean that no evidences of any sort of a claim to a future home should be required

of the claimant. We think that had any tract of land owned by an execution debtor, but not occupied by him as a homestead, been levied upon to be sold under execution, he would have been required to have made known his claim, that he intended the land levied upon as his homestead, and that in case of failure to do so, he would have been barred thereafter to make such claim. (Kuntz v. Baechr, 28 La. Ann. 90; Fruge v. Fulton, 120 La. 750, 45 So. 595.) A sheriff's sale is of no higher order than a voluntary sale. And we think that where a conveyance was made while the act of 1909 was in force, and the premises conveyed were not occupied as a homestead by the grantor, but he in fact claimed the land as such, it was his duty to make his claim known and in case of failure to do so, he should be held barred from making any such claim thereafter. Any other construction of the law would make it clearly an instrument of fraud, and would endanger every conveyance made in this state during the time the act of 1909 was in force, which failed to waive the right of homestead, even though there was no thought in the minds of the grantors thereof to claim any right of homestead in the premises conveyed. This holding does not conflict with the cases of Swandale v. Swandale, 25 S. C. 389; Nance v. Hill, 26 S. C. 227, 1 S. E. 897; Mayho v. Cotton, 69 N. C. 289, to which we have been cited by counsel for plaintiff, for it will be found, upon examination, that the claims of homestead in those cases were made timely and before sale of the premises was made. The contention of plaintiff, accordingly, that he has a homestead right in said premises must be overruled.

2.    Plaintiff claims that the defendant Armstrong was disqualified to act as a notary to take the acknowledgment of plaintiff to the mortgage in controversy; that hence it was not entitled to be placed of record; that the sale made, therefore, by advertisement under the power of sale contained in the mortgage was void, and that defendants have at most only an equitable mortgage. The court found, as a conclusion of law, that the defendant Armstrong had such

an interest in said mortgage as to disqualify him from taking the acknowledgment. We concur in this finding of the court. The defendants purchased the bankrupt estate of J. N. Arnold Company upon joint account, the defendants Montgomery and Bryon to furnish the money to buy it, and the defendant Armstrong to do the work whereby the property bought could be turned to mutual profit for all. Such an agreement, if not entirely so, was at least in the nature of a joint adventure. (Irvine v. Campbell, 121 Minn. 192; 141 N. W. 109, Ann. Cas. 1914 C. 689; Botsworth v. Van Riper, 33 Nevada 156, 110 Pac. 705; Nelson v. Lindsey, 179 Iowa 862, 162 N. W. 3.) Every collection made, every security taken, would enhance the value of the defendant Armstrong's interest in and to the accounts, notes and judgments of the par value of $26,700. The interest required to disqualify an officer does not depend upon the degree or amount. (1 R. C. L. 273; Bowden v. Parish, 86 Va. 67, 9 S. E. 619; 19 A. S. R. 878; Wilson v. Griess, 64 Neb. 792, 90 N. W. 866. See also Sheridan First National Bank v. Citizens State Bank, 11 Wyo. 32, 70 Pac. 726, 100 A. S. R. 925; Boswell v. Laramie First Nat. Bank, 16 Wyo. 161, 92 Pac. 624, 93 Pac. 961.) But the court further found that the disqualification of the notary not appearing on the face of the acknowledgment, the instrument was entitled to be filed of record, and that hence the sale made under the power of sale contained in the mortgage was valid.

No mortgage in this state can lawfully be foreclosed by advertisement under a power of sale contained in the mortgage, unless the mortgage containing such power has been duly recorded. (Sec. 4628, Wyo. C. S. 1920.) This has always been the law of this state. And the notice of foreclosure must contain a statement as to when it was recorded. (Sec. 4630.) The effect of the provisions of the statute is to annul the force of the power of sale unless the mortgage is recorded. Our attention is called to the cases of Wilson v. Traup, 2 Cowen 195, 14 Am. Dec. 458; Bergen v. Bennett, 1 Caines Cases 1, 17, 2 Am. Dec. 281, 287, and Jack-

son v. Golden, 4 Cow. 266, which hold that the recording of a mortgage is only for the benefit of the purchaser at a foreclosure sale and need not be recorded in order to foreclose by advertisement. These decisions are evidently based on the provisions of Chapter 156, Session Laws of New York of 1801, which make no requirement of recording the mortgage before starting foreclosure proceedings, or specifying in the notice of foreclosure the fact that the mortgage has been recorded. The laws of the State of New York were subsequently changed, and as found in 2 Rev. Statutes, 1829, pages 545, 546, make substantially the same requirements that are made by the laws of this state, and it was held, accordingly, under the laws as changed, that before a mortgage can be foreclosed by advertisement, it is necessary that the same, containing the power of sale, should be duly recorded. (Wells v. Wells, 47 Barb. 416.) That in fact is the universally recognized rule, and it is a prerequisite to a valid exercise of a power, not only that there must be a record of the mortgage or assignment, but also that it should have been entitled to record; otherwise the record, as between the parties, is a nullity, and the foreclosure proceedings, as between them, unauthorized and void. (Dohm v. Haskin, 88 Mich. 144, 50 N. W. 108; Lowry v. Mayo, 41 Minn. 388, 43 N. W. 78; 27 Cyc. 1464.) While the language in some of these cases is broader than stated by us, it being, for instance, said in Lowry v. Mayo, supra, that "the record, therefore, is a nullity, and the foreclosure proceedings unauthorized and void," yet, we think, in view of another rule of law hereinafter mentioned, that the nullity of the record and foreclosure proceedings must be understood as being limited, and having reference to the parties to the instrument only, as hereinbefore in this opinion stated.

An acknowledgment taken by an officer who by reason of interest is disqualified, is illegal; and in this case the defendants Montgomery and Bryon, interested as they were with the defendant Armstrong, were charged with notice of the disqualification of the latter to take the acknowledg-

ment in question. (Hamilton County Development Company v. Sullivan (Tex. Civ. App.) 220 S. W. 116.) An officer acting illegally, as did the defendant Armstrong in this case, should not, generally speaking at least, be permitted to acquire, for himself and his associates, a valuable right through and by virtue of his illegal act. The right of the exercise of a power of sale is a right that is valuable; and to hold that such right could be acquired, as between the parties to the instrument charged with knowledge of the illegal act of the notary, through an unlawful act of that notary, would clearly be repugnant to sound reasoning and contrary to all principles of law. No court, as far as we have been able to find, has so held.

Reference is made by counsel for defendants to the rule that where an acknowledgment is regular on its face, it is entitled to be recorded, and the record will operate as constructive notice. (1 C. J. 773; Boswell v. Laramie First Nat. Bank, supra.) We have no fault to find with this rule; it is sound, based on necessity, and is intended as, and necessary for, protection to the public whenever they examine the records. But the right to record under these circumstances is limited by the purpose which is intended to be subserved, and if in this case the mortgage, or the land after foreclosure, had passed into other hands, who had a right to rely upon the records, the rule would be applicable here. So, too, the lease of defendant Montgomery and Bryon to the Tri-State Oil Association is protected. Mortgagees, under this rule, will be protected, as to notice, along with third parties, and in that manner will, it is true, derive a certain advantage through an illegal act of an officer disqualified to take an acknowledgment. But it does not enlarge the rights which they already have as against the mortgagor; the rule simply protects them in the right which they actually possess, without any acknowledgment at all, as against the public generally who are charged with notice of the records. But to hold that a power of sale could become operative as between the parties, through an illegal act, would

enlarge the rights of the mortgagees against the mortgagor not otherwise existing. Clearly, as between the parties to the original instrument, charged with knowledge of the illegal act of the notary, the mortgage in controversy should be considered as though it were not acknowledged at all; otherwise the illegal act would indirectly, through the recording of the instrument, put the power of sale into operation, and thus confer a right on the mortgagees which they otherwise would not possess. Speaking of the rule mentioned and the point now under consideration, Chief Justice Waite, in National Bank of Fredericksburg v. Conway, 1 Hughes 37, 46, 17 Fed. Cas. 10,037, said:

"As against the grantee, a deed is as much voidable after record as before. So far as he is concerned, the effect of the record is only to change the burden of proof, to some extent, from him to the grantor. After a record duly made, the law presumes that all has been done which is necessary, to give the instrument validity, but this presumption may always be rebutted as against the grantee. And as against third parties, it may be shown that a deed was never signed, sealed or delivered.

Clearly, therefore, it is against the policy of the recording acts to hold an acknowledgment void because of the secret interest of an officer taking and certifying it. The effort should be to prevent rather than allow hidden defects in the evidence of public records. If voidable only, it is sufficient to authorize the record, if not previously avoided. So, too, as has been seen, it may be avoided at any time after record and before the rights of third parties have attached. This, as it seems to us, furnishes the grantor with all the protection he has a right to demand as against the consequences of his own acts, and at the same time leaves to the recording acts their legitimate power and effect."

In the case of Lankford v. First National Bank, 75 Okla. 159, 183 Pac. 56, it is said:

"The courts that are in accord with the Supreme Court of Oklahoma have adopted the rule that, where an instrument

has been acknowledged or attested, which acknowledgment or attestation is regular upon its face, but the officer who takes the acknowledgment or witness who attests the same are disqualified by reason of their interest therein, but said fact does not appear upon the face of the instrument, the recording or filing of the instrument for record is voidable, and not void, and the same imparts constructive notice to every one until the recording of the same is canceled or set aside; and the same will support an action by the mortgagor therein to have the same canceled of record by reason of the interest of the witnesses, or the person who has taken the acknowledgment, but until the same is canceled or proceedings brought to cancel the same it is of the same binding force and effect as if said defect did not exist, and is constructive notice to all subsequent purchasers or incumbrancers.''

The attack against the illegal portion of the mortgage should no doubt be made in a direct proceeding for that purpose. We think the attack herein is direct. (Jenkins v. Jonas Schwab Co., 138 Ala. 664, 35 So. 649; Monroe v. Arthur, 126 Ala. 362, 28 So. 476, 85 A. S. R. 36.) And we are accordingly constrained to hold that the foreclosure sale made herein, and the sheriff's deed issued pursuant thereto, are, as between the parties hereto, null and void.

3. Defendants contend that the plaintiff is guilty of laches, and is hence estopped from now setting up his claim. As to the point in question we cannot see how that doctrine can be invoked. While there is proof in this case that the plaintiff soon after the execution of the mortgage learned that it was made to the defendants Montgomery & Bryon, there is no evidence as to when he acquired the knowledge that the defendant Armstrong was a disqualified person to take the acknowledgment in question. Laches cannot be imputed to a party justifiably ignorant of the facts creating his cause of action. (1 C. J. 244.) And when a suit is brought within the time fixed by the analogous statute of limitation, the burden is on the defendants to show that extraordinary

circumstances exist which require the application of the doctrine of laches in order to secure a just result. (Brun v. Mann, 151 Fed. 145; 80 C. C. A. 51, 12 L. R. A. N. S. 154; Kelley v. Boetcher, 85 Fed. 55, 62, 56 U. S. App. 363, 29 C. C. A. 14; See Bunch v. United States, 252 Fed. 673, 678.) And included in such proof, obviously, must be the fact that the plaintiff has such knowledge requisite under general principles of equity so as to hold him estopped.

4. The defendants further contend that the plaintiff should have offered to do equity, or should have tendered the amount due to the defendants. That is often held necessary, but we do not consider it indispensable in a case where, as here, the foreclosure sale is voidable at the option of the mortgagor, particularly where, as in this case, it is sought, on reasonable grounds, to defeat the whole instrument and lien given thereunder. A similar contention as here was made in the case of Brewer v. Harrison, 27 Colo. 349, 62 Pac. 224, where the court said:

"On behalf of appellees it is claimed that appellants are not in a position to attack the validity of the trustee's sale, for the reason that, although such sale might be voidable at their election, they cannot avail themselves of this privilege, unless they offer to do equity, which, in this instance, counsel for appellee insist is an offer to redeem, that is, to pay the amount, with interest, which was realized at the trustee's sale, and applied upon the obligation secured by the deed of trust. Appellants are not compelled to redeem from a sale which, at their election, is void. The sale not having been made according to law, appellees cannot insist, as a condition precedent to setting it aside, that appellants be required to comply with conditions before they can take advantage of the misconduct of the appellees. In other words, the foreclosure at their election being void, they have a right to treat the proceedings as though no foreclosure had ever been had."

5. The mortgage in controversy is good between the parties hereto as an equitable mortgage, though considered as

not acknowledged at all. (Boswell v. First Nat. Bank, 16 Wyo. 161, 182, 92 Pac. 625, 629; Conradt v. Lepper, 13 Wyo. 473, 485, 81 Pac. 307, 308.) Hence though a tender of the amount due is not, as we have said, a necessary requirement in the petition of plaintiff, he cannot ask the cancellation of the mortgage or have his title in the land quieted against the claims of defendants without doing equity. By asking affirmative relief herein he has subjected himself to this rule. (D. S. B. Johnston Land Co. v. Mitchel, 29 N. D. 510, 530, 151 N. W. 23.) What the equities between the parties are is to a large extent shown by the case just cited. Appellant should pay to the defendants Montgomery and Bryon the amount due under this mortgage, including interest to date of payment according to the terms of the note secured thereby; also the sum of $1191.00 with interest at 8% per annum from January 1, 1920, on account of the Brenniman mortgage, which defendants Montgomery and Bryon paid; also $21.63, with lawful interest from December 31, 1919, for the taxes of 1919, paid by the same defendants; also any other sums of money that have been paid by said defendants on account of further taxes, together with lawful interest from date of payment. Unless said sums of money are paid within thirty days after issuance of mandate from this court, an order of sale of said premises should be issued, and said premises be sold, as under execution, for the purpose of satisfying the amounts due as aforesaid together with lawful interest, and costs. Inasmuch as the lease to the Tri-State Oil Association is, as we have stated, protected, that lease, insofar as the same may be valid between the parties thereto, must be held valid as to the appellant, he being substituted to the rights and obligations of the original lessor thereof, in case he should redeem such premises.

The judgment entered in the court below is accordingly modified as herein indicated, and the District Court of Crook county is directed to set aside the foreclosure sale had and sheriff's deed issued; to ascertain the amounts due to the

defendants Montgomery and Bryon on the two mortgages aforesaid and taxes paid by them, together with interest thereon, and enter judgment therefor in their favor against the appellant declaring said amount a first lien against the premises in controversy, and ordering that in default of payment thereof within 30 days from the issuance of the mandate from this court, (or should the District Court not enter said judgment till after that time, then immediately after entering said judgment,) an order of sale of said premises be issued and said premises be sold as upon execution for the amount of such judgment, interest and costs. Said court may enter such other and further orders and decrees herein, as may be found necessary and proper, not inconsistent with this opinion; the appellant will recover his taxable costs in this court. Except as herein modified the judgment below is affirmed.

*Modified and Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.